IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WALTER EDWARD MYER, ) | |
| AIS # 254298, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  2:10cv406-CSC |
| ) | (WO) |
| CORRECTIONAL MEDICAL SERVS., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Walter Edward Myer ("Myer"), an indigent state inmate, challenging the adequacy of medical treatment provided to him while incarcerated at Easterling Correctional Facility, in Clio, Alabama.  The sole defendant is Correctional Medical Services ("CMS"), the corporate medical provider for the Alabama Department of Corrections.  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

The defendant filed a special report and relevant supporting evidentiary materials, including affidavits and medical records, addressing Myer's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe the report as a motion for summary judgment.  (Doc. # 13).  Thus, this case is now pending on the defendant's motion for summary judgment.  Upon consideration of the motion, the evidentiary materials filed in support thereof and the plaintiff's response to the motion, the

court concludes that the defendant's motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][1] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted) (footnote added); FED.R.CIV.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

In civil actions filed by inmates, federal courts

---

[1] Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must be support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

Consequently, to survive the defendant's properly supported motion for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249 (1986) . "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate

a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000).

A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be

granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the materials before the court indicate that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. The plaintiff has failed to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III.  FACTS[2]

Myer is incarcerated at Easterling Correctional Facility in Clio, Alabama. On March 6, 2010, Myer noticed blood in his urine. (Doc. # 13-2 at 71). On March 7, 2010, he requested medical services. (Doc. # 19, Pl's Resp. to Special Rep. at 1). On March 8, 2010, Myer saw Dr. Darbouze. (*Id*.) An urine sample was collected and tested. (Doc. # 13-3 at 47). On March 9, 2010, Jones was prescribed antibiotics, (doc. # 13-2 at 52). Testing on March 10, 2010 revealed "[a]typical urothelial cells present." (*Id*.) On March 12, 2010, an

---

[2] The facts are gleaned from the pleadings, the exhibits filed by CMS in support of its special report, and the undisputed records in Myer's inmate medical file.

ultrasound revealed a mass on the left superior renal post of the kidney and bilateral renal cysts. (Doc. # 13-3 at 45). On March 12, 2010, a consultation request for Myer to be evaluated by an urologist was made. (Doc. 13-1 at 2; Doc. # 13-3 at 20). On March 15, 2010, a consultation request for a CT scan of Myer's abdomen and pelvis was placed. (*Id*.; Doc. # 13-3 at 18-19).

On March 29, 2010, Myer underwent a CT scan of his abdomen. (Doc. # 13-3 at 44). The CT scan revealed the following.

> The kidneys show no evidence for stones. There are bilateral renal enhancing masses. Extending from the superior pole of the right kidney on image 25 there is a 3.4 x 4.1 cm mass. Extending laterally off the left kidney on image 33 there is a 4.4 x 83.3-cm mass. Both lesions are suspicious for renal neoplasms perhaps renal cell carcinomas. There are more simple cysts bilaterally as well. Extending off the superior pole of the left kidney there is an exophytic 3.7 x 2.6 mm cyst and in the mid kidney a 15 x 16 mm cyst. In the right kidney in the midpole there is a 14 x 13 mm cyst.

(Doc. # 13-3 at 43 & 44).

On March 31, 2010, Myer was evaluated at Urological Associates of Dothan. (Doc. # 13-3 at 42). A flexible cystoscopy[3] was performed in the office. The cystoscopy revealed "an obstructing prostrate." (*Id*.) A MRI was ordered. On April 1, 2010, a consultation request for a MRI of Myer's abdomen and pelvis was placed. (Doc. # 13-3 at 11). On April 2, 2010, Myer underwent a MRI of the pelvis and the abdomen. (Doc. # 13-3 at 40-41). The MRI of the pelvis was unremarkable. (*Id*. at 40). The MRI of the abdomen revealed the

---

[3] A cystoscopy is a medical procedure that involves the insertion of a cystoscope into the urethra and allows physician to see into the bladder and urethra.

following.

> There are two enhancing lesions both extending from the superior pole of each kidney. On the right the lesion measures 3 cm in length, 2.1 cm in transverse and 3.1 cm in AP dimension. On the left the lesion measures 8.2 cm in transverse, 4.1 cm in length and 4.3 cm in transverse dimension. Both lesions show enhancement and are suspicious for neoplasms, probably renal cell carcinoma. Ultimate diagnosis would require histologic verification. I do not see evidence of spread of neoplasm beyond the perirenal fat. Neither adrenal gland appears pathologic.
>
> Based on the recent CT study there are bilateral simple appearing cysts of the kidneys and hepatic cysts which do not appear neoplastic.
>
> *     *     *
>
> IMPRESSION: Benign appearing bilateral renal and hepatic cysts, detailed above. These have not changed from recent CT study.
>
> Bilateral enhancing renal masses suspicious for renal cell carcinoma with ultimate diagnosis requiring histologic verification. There is no evidence for spread beyond the perirenal fat.

(Doc. # 13-3 at 40-41).

Myer was advised that "[h]e may ultimately need bilateral renal surgery" because of the bilateral renal masses. (Doc. # 13-3 at 42). On April 22, 2010, a consultation request for an urology appointment for Myer was placed. (Doc. # 13-3 at 5-6).

On May 4, 2010, a consultation request for a pre-surgery evaluation for a "resection of renal masses" was placed. (Doc. # 13-3 at 1 & 3; Doc. # 13-1 at 4). The pre-operative appointment was scheduled for May 14, 2010. (Doc. # 13-3 at 1). Myer was seen at Flowers Hospital in Dothan, Alabama on May 14, 2010, and surgery was scheduled for May 18, 2010. (Doc. # 13-2 at 133; Doc. # 13-3 at 7 & 23)

Myer underwent "radio frequency ablation of the renal masses" surgery and biopsy on May 18, 2010, at Flowers Hospital. (Doc. # 13-1 at 4; Doc. # 13-2 at 123-28) Myer's final diagnosis was as follows.

> Right and left renal mass (CT guided needle biopsy); Renal oncocytic neoplasms; differential diagnosis includes renal oncocytoma and chromophobe renal cell carcinoma.

(Doc. # 13-2 at 124, 128). The ablation was successful and Myer was scheduled for a follow-up appointment in one month. (Doc. # 13-2 at 127). Myer was discharged on May 19, 2010. (Doc. # 13-2 at 119-22). On May 20, 2010, a consultation request for another CT scan of the abdomen and a follow-up appointment after surgery was placed. (Doc. # 13-2 at 130). CMS also requested a consultation with an oncologist on May 25, 2010. (Doc. # 13-2 at 5). CMS approved the oncology consultation on May 26, 2010. (*Id.*) An appointment was scheduled for June 23, 2010. (*Id.*)

The CT scan and appointment were scheduled for June 17, 2010. (*Id.*) The consultation request was approved on June 1, 2010. (Doc. # 13-2 at 9). Myer underwent the CT scan on June 18, 2010 as scheduled. (Doc. # 13-2 at 6-8, 10). The CT scan revealed

> 1) Status post radiofrequency ablation, while there has been no real decrease in size on the right and the measurements are slightly larger on the left approximately 7 mm, differences may be technical. The low-density raises the question of necrosis of the masses. Close follow-up recommended in a few months.
> 2) Probable hepatic cyst.
> 3) Choletithiasis.

(Doc. # 13-2 at 6-7).

9

On June 23, 2010, Myer was seen at the Montgomery East Cancer Center in Montgomery, Alabama. (Doc. # 13-2 at 2-3). The report from the oncologist, Dr. Matin, noted

> bilateral renal lesions - pathology is benign oncocytoma vs renal cell carcinoma  Recent CT shows regression of [right] mass & stable [left] mass after RFA. [No] other cancerous/suspicious areas seen. [No] symptoms.

(Doc. # 13-2 at 2). Dr. Matin ordered a follow-up CT scan in two months with a follow-up appointment with him scheduled within two weeks of the CT scan. (*Id.*)

## IV. DISCUSSION

In this case, Myer complains that defendant CMS failed to provide him adequate and appropriate medical care during the period from March 2010 until June 2010.[4]  During Myer's incarceration, CMS was the medical provider contracted to provide medical services to the Alabama Department of Corrections. Myer sues only CMS; he does not name any individual as a defendant. Thus, it appears that Myer is seeking to hold Correctional Medical Services liable for conduct of unnamed medical personnel.

> "[W]hen a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive

---

[4] In response to the defendant's special report, Myer asserts that he was not scheduled for a pre-operative appointment and surgery until after he filed this lawsuit. (Doc. # 19 at 3). The undisputed evidence belies this assertion. A MRI consultation was requested on April 1, 2010. (Doc. # 13-3 at 11). Myer underwent the MRI on April 2, 2010. (Doc. # 13-3 at 40-41). On April 22, 2010, a consultation request for an urology appointment for Myer was placed. (Doc. # 13-3 at 5-6).

On May 4, 2010, a consultation request for a pre-surgery evaluation for a "resection of renal masses" was placed. (Doc. # 13-3 at 1 & 3; Doc. # 13-1 at 4). At that time, the pre-operative appointment was scheduled for May 14, 2010. (Doc. # 13-3 at 1). Myer filed this lawsuit on May 11, 2010, and the defendant was served on May 13, 2010. (Doc. # 5). Myer was already scheduled for a pre-operative appointment at Flowers Hospital in Dothan, Alabama before this action was filed and the defendant was served.

10

> prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under § 1983 may not be based on the doctrine of respondeat superior." *Grech v. Clayton Cnty, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003)(en banc).

*Craig v. Floyd Cnty, Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).

Because CMS is a private medical contractor performing a traditional state function of providing health care to inmates, CMS is the functional equivalent of a municipality. Consequently, the court evaluates Myer's claim against CMS as it would evaluate the claim against a municipality. The law is well-established that a municipality cannot be held liable under a theory of *respondeat superior* or vicarious liability. "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." *Belcher v. Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) quoting *Hardin v. Hayes*, 957 F.2d 548, 849 (11th Cir. 1992). *See also Cook v. Sheriff of Monroe Cnty, Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999); *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

> [R]espondeat superior is not a valid theory of liability for private contractors employed by a state, *Street* [*v. Corrections Corp. of Am.*,] 102 F.3d [810,] 818 [(6th Cir. 1996)]. Indeed, "every circuit to consider the issue" has extended "to private corporations as well" the rule that a defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis. *Id*. That [the defendant] is a professional limited liability company makes no difference with respect to respondeat superior liability under section 1983. *See e.g., Craig v. Floyd Cty, Ga*, 643 F.3d 1306, 1310 (11th Cir. 2011) (finding

11

that section 1983 claims against limited liability company cannot be based on respondeat superior.)

*Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012).

Thus, the plaintiff cannot state a § 1983 claim against CMS based on the actions of its employees. Because CMS cannot be held liable directly, to survive summary judgment, Myer must also demonstrate that CMS had a policy or custom that represents official policy that resulted in the delay or denial of adequate medical care to him. *See Savoie*, *supra*. *See also Berdin v. Duggan*, 701 F.2d 909, 914 (11th Cir. 1983). CMS's liability is dependent upon Myer establishing that any constitutional violation he suffered was the result of a policy or custom of CMS. "[O]nly when a "policy or custom" of the municipality inflicts the injury does § 1983 liability exist." *Cook*, 402 F.3d at 1116; *Buckner*, 116 F.3d at 452. *See also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

> Supervisory liability under 1983 occurs only when "the supervisor personally participates in the alleged unconstitutional conduct or there is a causal connection between the acts of the supervising official and the alleged constitutional deprivation." [*Cottone v. Jenne*, 362 F.3d 1352, 1360 (11th Cir. 2003)] A causal connection may be established . . . when "a supervisor's custom or policy results in deliberate indifference to constitutional rights", . . .

*Belcher*, 30 F.3d at 1396. *See also Buckner*, 116 F.3d at 452. Moreover, the Eleventh Circuit has stated that "[t]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999). The Eleventh Circuit has defined "custom" to mean "a practice that is so settled and permanent that it takes on the force of law." *Id.*

To avoid summary judgment, Myer must present sufficient evidence creating a genuine dispute of material fact that CMS has a policy or custom of delaying or denying adequate medical care that resulted in deliberate indifference to his constitutional rights. This he has failed to do. Myer does not allege, and he presents no evidence, linking his claims to any official policy or custom of CMS. He has not demonstrated that any injury he may have suffered was ascribable to a CMS policy or custom. Therefore, the court concludes that Myer has failed to offer sufficient evidence that would allow a jury to conclude that CMS has a policy or custom of delaying or denying adequate medical care to inmates. Summary judgment is due to be granted in favor of defendant Correctional Medical Services.

To the extent that Myer argues his medical treatment constituted negligence, he is entitled to no relief on this basis. To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Myer's claim that CMS did not diligently pursue adequate and timely treatment of his renal condition, at best, constitutes negligence or medical malpractice - neither of which is actionable under § 1983.

The law is well settled that "medical malpractice - negligence by a physician - is insufficient to form the basis of a claim of deliberate indifference." *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999). *See also Adams*, 61 F.3d at 1544 ("a plaintiff must demonstrate more than mere negligence in order to assert an Eighth Amendment violation.");

*McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Mere medical malpractice, however, does not constitute deliberate indifference."); *Rogers*, 792 F.2d at 1058 ("Mere negligence or malpractice does not violate the eighth amendment.").

For the reasons as stated, the court concludes that the defendant's motion for summary judgment is due to be granted.

### IV. CONCLUSION

Accordingly, it is

ORDERED and ADJUDGED that :

1. The defendant's motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendant.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

A separate order will enter.

Done this 9th day of April, 2013.

                         /s/Charles S. Coody
                         CHARLES S. COODY
                         UNITED STATES MAGISTRATE JUDGE